**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERTO JAVIER BLANDINO-MEDINA, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 11-72081 Agency No. A077-223-173 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 17, 2012—San Francisco, California

Filed April 10, 2013

Before: Carlos T. Bea and Andrew D. Hurwitz, Circuit
Judges, and William K. Sessions, District Judge.[*]

Opinion by Judge Bea

---

[*] The Honorable William K. Sessions, III, District Judge for the U.S. District Court for the District of Vermont, sitting by designation.

**SUMMARY**[**]

**Immigration**

The panel denied a petition for review of the Board of Immigration Appeals' denial of protection under the Convention Against Torture to a citizen of Nicaragua, and vacated the Board's holding that petitioner's conviction for lewd and lascivious acts with a child under the age of 14, in violation of California Penal Code § 288(a), is a *per se* particularly serious crime precluding withholding of removal relief.

As an initial matter, the panel held that the petition presented a live case or controversy, notwithstanding petitioner's removal to Nicaragua, because petitioner's removal had the collateral consequence of rendering him inadmissible under 8 U.S.C. § 1182(a)(9)(A)(ii). Distinguishing *Kaur v. Holder*, 561 F.3d 957 (9th Cir. 2009), the panel rejected the government's argument that the petition was moot because there was an independent basis for petitioner's inability the return to the United States – the fact that his conviction was a crime involving moral turpitude – because petitioner could seek a discretionary waiver under 8 U.S.C. § 1182(h).

The panel held that 8 U.S.C. § 1231(b)(3)(B)(iv) unambiguously creates only one category of *per se* particularly serious crimes for purposes of withholding of removal, aggravated felonies for which the alien was

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

sentenced to at least five years' imprisonment, and precludes the agency from creating additional categories of facially particular serious crimes. The panel held that the Board therefore erred in concluding that petitioner's conviction for lewd and lascivious acts with a child under the age of 14, in violation of California Penal Code § 288(a), was *per se* particularly serious. The panel remanded for the Board to engage in a case-specific analysis in accordance with *Matter of Frentenscu*, 18 I. & N. Dec. 244 (BIA 1982) to determine whether petitioner's conviction was for a particularly serious crime.

The panel held that substantial evidence supported the Board's determination that petitioner failed to establish a clear probability that he would be tortured if returned to Nicaragua.

---

## COUNSEL

Madeline Feldon (argued), Amy VyHanh Nguyen (argued), and Evangeline G. Abriel, Santa Clara University School of Law, Santa Clara, California, for Petitioner.

Zoe J. Heller (argued), Office of Immigration Litigation, Washington, D.C., for Respondent.

---

## OPINION

BEA, Circuit Judge:

Roberto Xavier Blandino-Medina, a Nicaraguan citizen, seeks review of two decisions by the Board of Immigration

Appeals ("BIA"): (1) a decision reversing an Immigration Judge's ("IJ's") grant of withholding of removal pursuant to the Convention Against Torture ("CAT"), and (2) a decision affirming the IJ's finding that Blandino's conviction for lewd and lascivious acts with a child under the age of 14, in violation of California Penal Code § 288(a), is a particularly serious crime, rendering him statutorily ineligible for withholding of removal.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). We affirm the BIA's decision concerning withholding of removal pursuant to the CAT, but vacate its decision holding that Blandino's conviction under Section 288(a) is a particularly serious crime *per se*, and remand to the BIA to consider the circumstances of the offense.

## I.  Facts and Procedural Background

Blandino is a Nicaraguan citizen, born in 1982. Several members of Blandino's family were affiliated with the Somoza regime, and after the Sandinistas took power, his family was persecuted. Blandino's father fled to the United States in 1986 and was later granted political asylum. In 1987, Blandino came to California to live with his father.

When Blandino was ten years old, his father sent him back to Nicaragua. Shortly after returning, Blandino encountered problems with the Sandinista National Liberation Front ("FSLN"). While Blandino was in school, the FSLN forced students to do manual labor. Blandino was forced to build barricades and beaten for not complying with the FSLN's instructions. When he was fifteen years old, Blandino was detained by the police for three days and questioned about his parents.

On December 19, 1998, Blandino entered the United States without permission and was apprehended by Border Patrol agents. The Immigration and Nationalization Service ("INS") sought to remove him for entering the country illegally. Blandino applied for Temporary Protected Status ("TPS"), and in 1999 the INS granted that application and closed removal proceedings.

Since 1999, Blandino has been convicted of three crimes. The third conviction is central to this appeal: a 2008 guilty plea to the felony of lewd and lascivious conduct with a child under the age of fourteen in violation of Section 288(a),[1] for which Blandino was sentenced to one year in county jail, five years of felony probation, and registration as a sex offender.

In 2009, the Department of Homeland Security ("DHS") re-instituted removal proceedings. Blandino appeared before an IJ, conceded the legal and factual bases for removal, but sought cancellation of removal and adjustment of status (along with a waiver of inadmissibility) pursuant to 8 U.S.C. § 1182(h), as a spouse or child of a person granted asylum. Claiming political persecution, Blandino also applied for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the CAT.

---

[1] California Penal Code § 288(a) states: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

The IJ denied Blandino's applications for cancellation of removal and for a waiver of inadmissibility in conjunction with his application for adjustment of status. The IJ also denied Blandino's asylum application. However, the IJ granted Blandino's application for withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the CAT.

The government appealed the IJ's grant of withholding of removal under 8 U.S.C. § 1231(b)(3) and the CAT to the BIA; Blandino did not seek review of the IJ's denial of cancellation of removal, waiver of inadmissibility, or asylum. The BIA remanded for the IJ to determine whether Blandino's conviction under Section 288(a) was a "particularly serious crime" rendering him ineligible for withholding of removal.[2] The BIA instructed the IJ "to examine the statutory elements of the alien's crime; if an offense qualifies as a particularly serious crime based solely on its elements, then no further inquiry is required and the application for withholding of removal must be pretermitted."

On remand, the IJ noted that he had previously found Blandino's Section 288(a) conviction not particularly serious because "respondent honestly believed based upon the victim's representation that she was 19 years old." After examining the elements of Section 288(a), but without re-examining the facts and circumstances of Blandino's conviction, the IJ concluded that Blandino had been convicted of a particularly serious crime.

---

[2] 8 U.S.C. § 1231(b)(3)(B)(ii) provides that an alien may not be removed to a nation in which his life or freedom would be threatened on a protected ground unless "the Attorney General decides . . . the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States."

The BIA dismissed Blandino's appeal, agreeing "with the Immigration Judge's determination that the respondent is ineligible for withholding of removal under the [INA] as his offense constitutes a 'particularly serious crime' *per se*." This petition for review followed.

## II. Mootness

DHS removed Blandino to Nicaragua after this court granted Blandino's request to lift a temporary stay of removal. The threshold issue is whether Blandino's appeal from the denial of withholding of removal presents a live case or controversy.

"Mootness is a jurisdictional issue which [this court] review[s] de novo." *In re Arnold & Baker Farms*, 85 F.3d 1415, 1419 (9th Cir. 1996). An individual who has already been removed can satisfy the case-or-controversy requirement by raising a direct challenge to the removal order. *See, e.g.*, *Lopez v. Gonzalez*, 549 U.S. 47 (2006). A petitioner can also establish a live controversy by demonstrating concrete collateral consequences from the removal. *See, e.g.*, *Zegarra-Gomez v. INS*, 314 F.3d 1124, 1127 (9th Cir. 2003) (holding that because petitioner's inability to return to the United States for twenty years as a result of his removal was "a concrete disadvantage imposed as a matter of law, the fact of his deportation did not render the pending habeas petition moot").

Blandino claims standing to challenge his removal because it renders him inadmissible to the United States for ten years pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii). The government, relying on *Kaur v. Holder*, 561 F.3d 957 (9th Cir. 2009), argues that there is an independent basis for

Blandino's inability to reenter the United States, namely, the agency's independent determination that his conviction under Section 288(a) is a crime involving moral turpitude.

In *Kaur*, the petitioner sought review of a BIA decision denying him asylum and withholding of removal. *Id.* at 958. The BIA had found that Cheema was a danger to the security of the United States. *Id.* This court dismissed his petition as moot because he had "already been deported and he suffer[ed] no collateral consequences from the withholding decision." *Id.* at 959. He did not fall under the collateral consequences exception to mootness because his inadmissibility to the United States was "not a collateral consequence of the BIA's denial of withholding of deportation; rather it [was] a collateral consequence of the Board's *unchallenged* determination under 8 U.S.C. § 1182(a)(3)(B)(i)(I) that Cheema is an alien who engaged in terrorist activities." *Id.*

However, there is a significant distinction between Cheema's situation and Blandino's: although there is no waiver of inadmissibility for aliens who, like Cheema, are found to have engaged in terrorist activities, *see* 8 U.S.C. § 1182(a)(3)(B)(I), a discretionary waiver is available for aliens who, like Blandino, have been convicted of crimes involving moral turpitude, *see* 8 U.S.C. § 1182(h).

The government correctly notes that Blandino has already applied for such a waiver, which has been denied. However, that denial does not preclude him from again seeking the same waiver in connection with a new visa petition. Rather, "USCIS does not place a restriction on the number of times [an alien] may file a Form I-601." *See* U.S. Citizenship and Immigration Services, Centralized Filing and Adjudication

for Form I-601, Application for Waiver of Grounds of Inadmissibility. When evaluating a waiver of inadmissibility, the adjudicator "is required to balance the equities and adverse matters to determine whether discretion should be favorably exercised." *Matter of Mendez-Morales*, 21 I. & N. Dec. 296, 301 (BIA 1996). Given the highly discretionary nature of this determination, it is possible that a future adjudicator will "balance the equities and adverse matters" in a manner different than did the original IJ. This is sufficient to give Blandino "a personal stake" in the litigation. *Swaby v. Ashcroft*, 357 F.3d 156, 161 (2d Cir. 2004).

### III.    The BIA's Authority to Determine that Certain Offenses Are "Particularly Serious Crimes" *Per Se*

Whether the BIA applied the proper legal standard in determining whether Blandino's crime was "particularly serious" raises a question of law. We have jurisdiction over questions of law raised in petitions for review. 8 U.S.C. § 1252(a)(2)(D); *see also Miguel-Miguel v. Gonzalez*, 500 F.3d 941, 944 (9th Cir. 2007). Although we "cannot reweigh evidence to determine if the crime was indeed particularly serious, [we] can determine whether the BIA applied the correct legal standard." *Afridi v. Gonzalez*, 442 F.3d 1212, 1218 (9th Cir. 2006). This Court reviews both the BIA's decision and those portions of the IJ's decision incorporated by the BIA. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 n.3 (9th Cir. 2004).

### A.  Standard of Review and *Chevron* Deference

We ordinarily review questions of law *de novo*. However, the Court must afford deference under *Chevron*

*U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to the BIA's reasonable interpretations of ambiguous statutes it is charged with administering. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (citing 8 U.S.C. § 1101(a)(3)).

The first step of the *Chevron* analysis considers whether "the statute is silent or ambiguous with respect to the specific issue." *Chevron*, 467 U.S. at 843. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. Courts "only defer . . . to agency interpretations of statutes that, applying the normal 'tools of statutory construction,' are ambiguous." *INS v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) (quoting *Chevron*, 467 U.S. at 843).

"[I]f the statute is silent or ambiguous with respect to the specific issue," the court moves to step two of the *Chevron* inquiry, and considers "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Deference "is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *Aguirre-Aguirre*, 526 U.S. at 425 (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)).

## B. Statutory Framework

Applying the "traditional tools of statutory construction," we conclude that 8 U.S.C. § 1231(b)(3)(A) is not ambiguous.

We begin with the text and the history of the statute. Section 1231(b)(3)(A)(ii) provides that an alien may not be

removed to a nation in which his life or freedom would be threatened on a protected ground unless "the Attorney General decides . . . the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." Before 1990, the Immigration and Nationality Act did not define "particularly serious crime." *See Miguel-Miguel*, 500 F.3d at 945.

In *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982), the BIA developed a multi-factor test for determining whether a crime was particularly serious. Frentescu had been convicted of burglary, sentenced to three months in jail, and placed on probation for one year. *Id.* at 245. To determine whether Frentescu had been convicted of a "particularly serious crime," the BIA described the required inquiry as follows:

> While there are crimes which, on their face, are "particularly serious crimes," or clearly are not "particularly serious crimes,"[3] the record in most proceedings will have to be analyzed on a case-by-case basis. In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.

---

[3] The BIA did not identify in *Matter of Frentescu* any crimes that were, on their face, "particularly serious crimes" or clearly not "particularly serious crimes."

*Id.* at 247.**[4]**  After applying these "*Frentescu* factors" the BIA found that Frentescu's crime was not particularly serious, because it was a crime against property, he had not been armed, and had received a relatively short sentence.  *Id.*

In 1990, we held that *Frentescu*'s case-by-case analysis was mandatory and that the BIA could not create categories of *per se* particularly serious crimes.  *Beltran-Zavala v. INS*, 912 F.2d 1027 (9th Cir. 1990).  We explained:

> If Congress wanted to erect per se classifications of crimes precluding immigration and nationality benefits, it knew how to do so . . . In contrast, the language of [the particularly serious crime provision], as interpreted in *Frentescu*, commits the BIA to an analysis of the characteristics and circumstances of the alien's conviction.

*Id.*

Since *Beltran-Zavala*, Congress has thrice amended the provision barring withholding of removal for those convicted of certain crimes.  In 1990, Congress amended the INA to provide that all aggravated felonies were categorically

---

**[4]** The *Frentescu* factors have evolved slightly.  The BIA no longer engages "in a separate determination to address whether the alien is a danger to the community."  *Matter of N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007); *see also Kankamalage v. I.N.S.*, 335 F.3d 858, 861 n.2 (9th Cir. 2003) ("Once the INS makes a finding that an offense constitutes a particularly serious crime, a separate determination of danger to the community is not required.").

particularly serious crimes.[5]  Immigration Act of 1990, Pub. L. No. 101-649, § 515 (Nov. 29, 1990).  This amendment effectively overruled *Matter of Frentescu* and *Beltran-Zavala* in part, by precluding case-by-case analysis of an aggravated felony.  *See Afridi*, 442 F.3d at 1220 n.4.

In 1996, Congress eliminated the categorical rule, replacing it with a rebuttable presumption that aggravated felonies were particularly serious crimes.  *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 413(f) (Apr. 24, 1996).  A few months later, however, Congress again amended the statute.  *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C, sec. 305, § 241 (Sept. 30, 1996) (codified at 8 U.S.C. § 1231(b)(3)(B)) ("IIRIRA").  This version, which applies to Blandino's case, and remains in effect today, provides in relevant part:

> [A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length

---

[5] At that time, only a limited number of offenses had been designated "aggravated felonies."  *See* Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469–70 (1988 version of the INA) (defining "aggravated felony" as: "murder; any drug trafficking crime . . . or any illicit trafficking in any firearms or destructive devices").  The Immigration Act of 1990 added money laundering and crimes of violence for which the term of imprisonment is at least five years to the list of aggravated felonies.  *See* Pub. L. No. 101-649, § 501, 104 Stat. 4978, 5048.

of sentence imposed, an alien has been convicted of a particularly serious crime.

8 U.S.C. § 1231(b)(3)(B)(iv).

Thus, the current version of the statute establishes a two-tiered approach. Aggravated felonies[6] for which an alien receives a sentence of imprisonment of five years or more are particularly serious crimes *per se*. This *per se* class, however, "shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." *Id.* The question at the first step of the *Chevron* inquiry is whether the statute is ambiguous as to whether the Attorney General has authority to create additional categories of *per se* particularly serious crimes.

We find that Congress has clearly expressed its intent: the overall structure of the INA compels the conclusion that Section 1231(b)(3)(B)(iv) establishes but one category of "per se" particularly serious crimes, and requires the agency to conduct a case-by-case analysis of convictions falling outside the category established by Congress. *See Illinois Pub. Telecommc'ns Ass'n v. Federal Commc'ns Comm.*, 117 F.3d 555, 568, *decision clarified on reh'g*, 123 F.3d 693 (D.C. Cir. 1997) ("[U]nder step one of *Chevron*, we consider not only the language of the particular statutory provision under scrutiny, but also the structure and context of the statutory scheme of which it is a part.").

---

[6] "As used in immigration law, 'aggravated felony' is a term of art referring to the offenses enumerated in [8 U.S.C.] § 1101(a)(43)." *Delgado v. Holder*, 648 F.3d 1095, 1101 (9th Cir. 2011) (en banc).

We start by applying the basic statutory construction principle of *expressio unius est exclusio alterius.* Under that principle, the express creation of one category of *per se* particularly serious crimes should be understood as the exclusion of other categorically particularly serious crimes. *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) ("The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'") (quoting *Boudette v. Barnette*, 923 F.2d 754, 756–57 (9th Cir. 1991)).

This reading is also the most consistent with the structure of the INA as a whole. Congress put considerable effort into delineating which crimes should be categorized as particularly serious *per se.* The extensive and detailed definition of the term "aggravated felony" in 8 U.S.C. § 1101(a)(43) demonstrates that Congress made specific decisions about what sorts of crimes should qualify as facially particularly serious. *Cf. Alphonsus v. Holder*, 705 F.3d 1031, 1043 (9th Cir. 2013) ("The aggravated felony definitions serve both to delineate the group of *per se* particularly serious crimes and to suggest the types of crimes most likely to be covered by the statute even when the aggregate sentence is less than five years.").

Our conclusion that Section 1231(b)(3)(B)(iv) precludes the agency's creation of additional categories of particularly serious crimes *per se* is supported by a comparison between Section 1231, which governs withholding of removal, and Section 1158, which governs asylum. Section 1158(b)(2)(A)(ii) prohibits the Attorney General from granting asylum to an alien "if the Attorney General

determines that . . . the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." This language is nearly identical to the provision at issue in this case, which provides that an alien shall not be eligible for withholding of removal "if the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii).

There are, however, key differences between the two provisions. All aggravated felonies are categorically particularly serious crimes for the purposes of asylum, but only aggravated felonies for which the alien was sentenced to at least five years' imprisonment are categorically particularly serious for the purposes of withholding of removal. *Compare* 8 U.S.C. § 1158(b)(2)(B)(i) (asylum) *with* 8 U.S.C. § 1231(b)(3)(B)(iv) (withholding of removal). More importantly, the provisions differ in describing how the Attorney General may designate other crimes as "particularly serious." The withholding of removal provision allows the Attorney General to determine "that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B)(iv). In contrast, the asylum statute allows the Attorney General to "designate by regulation offenses that will be considered to be a [particularly serious crime]." 8 U.S.C. § 1158(b)(2)(B)(ii).

We noted in *Delgado v. Holder* that "[t]here is little question that [the asylum] provision permits the Attorney General, by *regulation*, to make particular crimes categorically particularly serious even though they are not aggravated felonies." 648 F.3d 1095, 1106 (9th Cir. 2011)

(en banc) (emphasis in original). However, the withholding of removal statute is notably missing an analogue provision permitting the Attorney General to designate crimes as categorically particularly serious even if they are not aggravated felonies for which the defendant has received a sentence of at least five years.

The current language of both provisions was simultaneously enacted by Congress in 1996, when it passed the IIRIRA.[7] *See* Pub. L. No. 104-208, div. C, sec. 305, § 241, and sec. 604, § 208 (Sept. 30, 1996). "When 'Congress includes particular language in one section of a statute but omits it in another section of the same Act . . . it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" *Clay v. United States*, 537 U.S. 522, 528–29 (2003) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). This principle bolsters our conclusion that Congress's failure to include a provision explicitly granting the Attorney General the authority to designate offenses as categorically particularly serious crimes in the withholding of removal context precludes the agency's interpretation of the statute as granting it that authority.

For these reasons, we conclude that Section 1231(b)(3)(B)(iv) unambiguously provides one category of particularly serious crimes *per se*, precluding the agency's interpretation of the statute as allowing it to create additional categories of facially particularly serious crimes.

---

[7] Prior to the enactment of the IIRIRA, the asylum statute did not have a "particularly serious crime" provision; rather, it simply stated that aliens convicted of aggravated felonies were ineligible for asylum. *See* 8 U.S.C. § 1158 (Apr. 24, 1996).

### C.  BIA and Ninth Circuit Precedent

Although we base our conclusion on the text, history, and structure of the statute, our holding also comports with Ninth Circuit precedent and with the BIA's practice of applying the *Frentescu* case-by-case analysis in most cases involving convictions of offenses other than aggravated felonies.  In two en banc decisions, the BIA held that the IIRIRA revived the *Frentescu* case-by-case analysis for aggravated felony convictions resulting in a sentence of less than 5 years. *See Matter of L-S-*, 22 I. & N. Dec. 645, 649 (BIA 1999) (en banc), *Matter of S-S-*, 22 I. & N. Dec. 458, 463–65 (BIA 1999) (en banc).[8]   In 2006, this court accordingly reversed a decision by the BIA for failure to apply the *Frentescu* factors. *See Afridi*, 442 F.3d at 1218.  Afridi was convicted under California Penal Code § 261.5(c) for unlawful intercourse with a minor who was more than three years younger than the perpetrator and was sentenced to three years' probation. *Id.* at 1214.  The BIA found him statutorily ineligible for withholding of removal because he had been convicted of a particularly serious crime. *Id.* at 1217.  This court granted the petition for review in part noting, "The BIA considered two of the *Frentescu* factors, the nature of the conviction and the

---

[8] In *Matter of S-S-*, the BIA also noted that "Congress easily could have designated categories of aggravated felonies that it considered to be particularly serious crimes – either independently or in conjunction with a specific sentence – but it did not do so." 22 I. & N. Dec. at 464.  After holding that an individualized consideration of the facts and circumstances of each conviction for aggravated felonies resulting in less than five years' imprisonment was necessary, the BIA went on to note, "We leave for another day the question of whether, and under what conditions, it might be appropriate, as a matter of discretion, for the Attorney General to designate certain offenses as being particularly serious crimes per se." *Id.* at 465 n.7.

sentence imposed . . . [but] the BIA did not consider the circumstances and underlying facts of the conviction." *Id.* at 1219. We specifically noted that under the most recent statutory amendments, "aggravated felonies resulting in sentences fewer than five years are not per se particularly serious and still require a case-by-case analysis, as laid out in *Frentescu*." *Id.* at 1220 n.4.

The government argues that we should defer to the BIA's construction of 8 U.S.C. § 1231 in *Matter of N-A-M*, 24 I. & N. Dec. 336 (BIA 2007), that it may designate an offense as a particularly serious crime *per se*. But, because we have already resolved this case at the first step of the *Chevron* inquiry, we do not move to the second step of the inquiry, in which we ask whether the agency's interpretation is a "permissible construction" of the statute. *Chevron*, 467 U.S. at 843. We note briefly, however, that *Matter of N-A-M* does not necessarily support the government's position. The respondent in that case was convicted of felony menacing and sentenced to four years' deferred judgment. 24 I. & N. Dec. at 337. The BIA stated that where "a conviction is not for an aggravated felony for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years, we examine the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *Id.* at 342. The agency noted in dictum that "[o]n some occasions, we have focused exclusively on the elements of the offense,"[9] but "we have generally

---

[9] The BIA cited *Matter of Garcia-Garrocho*, 19 I. & N. Dec. 423, 425–26 (BIA 1986), in support of this proposition. The applicant in *Garcia-Garrocho* had been convicted of first-degree burglary in violation of New York Penal Law § 140.30. *Id.* at 425. The BIA stated that certain crimes are "inherently" or "per se" particularly serious, and require "no

examined a variety of factors and found that the consideration of the individual facts and circumstances is appropriate." *Id.* (internal quotations omitted). And, although stating that "that the respondent's offense is a particularly serious crime based solely on its elements," the BIA nonetheless examined the individualized characteristics of the offense, including the fact that the offense was a crime against a person, that the respondent was required to register as a sex offender, and the statement in support of the warrantless arrest describing the nature of the respondent's crime. *Id.* at 343.

We acknowledge that two other circuits have assumed, without explicitly deciding, that the BIA can make the "particularly serious crime" determination based solely on the elements of the offense.[10] However, no Ninth Circuit decision so holds, and our considered analysis of the statute at issue compels a contrary conclusion.

---

further inquiry into the nature and circumstances of the underlying conviction," *id.*, and held that "the applicant's conviction for burglary in the first degree is within the category of crimes that are per se 'particularly serious.'" *Id.* at 426. However, *Garcia-Garrocho* predates the 1996 passage of IIRIRA, which established the two-tier approach to determining which offenses are particularly serious crimes.

[10] In *Hamama v. INS*, which was decided several months before the "particularly serious crimes" provision at issue in this case was enacted by the IIRIRA, the Sixth Circuit stated that the BIA "has the prerogative to declare a crime particularly serious without examining each and every *Frentescu* factor." 78 F.3d 233, 240 (6th Cir. 1996). In *Lapaix v. U.S. Attorney General*, the Eleventh Circuit stated that in making the "particularly serious crime" determination, the IJ is "free to rely solely on the elements of the offense," but that "IJ's generally consider additional evidence" and apply the *Frentescu* factors. 605 F.3d 1138, 1143 (11th Cir. 2010).

**IV.    Substantial Evidence Supported the BIA's Finding that Blandino Failed to Establish a Clear Probability of Torture**

We affirm the BIA's denial of withholding of removal under the CAT because Blandino has not established a clear probability that he would be tortured if he returned to Nicaragua.  This court reviews "for substantial evidence the factual findings underlying the . . . BIA's determination that [the applicant] was not eligible for deferral of removal under the CAT."  *Arbid v. Holder*, 674 F.3d 1138, 1143 (9th Cir. 2012).  Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

In its initial decision to grant Blandino relief under CAT, the IJ specifically identified the past persecution of Blandino's family as grounds for granting relief.  On appeal, the BIA found that the record as a whole provided insufficient evidence to establish that it was "more likely than not" that Blandino would be tortured by the Nicaraguan government, and noted that rather than presenting hard evidence of a probability that he would be tortured, Blandino merely presented a series of worst-case scenarios.  Furthermore, he had not presented evidence that similarly-situated individuals are being tortured by Nicaraguan officials.  Given the deference this court must afford to the BIA's findings of fact, we affirm its decision to deny CAT relief to Blandino.

**Conclusion**

For the foregoing reasons, we GRANT Blandino's petition for review of the BIA's determination that he

committed a particularly serious crime, and we REMAND with instructions that the agency engage in a case-specific analysis in accordance with *Matter of Frentescu* to determine whether Blandino's conviction under Section 288(a) is a particularly serious crime, rendering him statutorily ineligible for withholding of removal.

We DENY Blandino's petition for review of the BIA's denial of his claim for relief under the Convention Against Torture.

All pending motions in this case are DENIED.

**GRANTED IN PART, DENIED IN PART, AND REMANDED.**