**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 05 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| HASSAN ABPIKAR, AKA John Abpikar<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney General,<br><br>Respondent. | No. 09-73384<br><br>Agency No. A026-361-799<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 16, 2013
San Francisco, California

Before: GRABER and CHRISTEN, Circuit Judges, and TUNHEIM, District
Judge.[**]

## A.    Introduction

Hassan Abpikar, a native and citizen of Iran, petitions for review of the

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

Board of Immigration Appeals' dismissal of his appeal. The Board affirmed the immigration judge's determinations that Abpikar was removable under 8 U.S.C. § 1227(a)(1)(A) and that Abpikar was ineligible for asylum and withholding of removal. The Board also affirmed the immigration judge's denial of Abpikar's application for cancellation of removal. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition in part and dismiss in part.

## B. Removal proceedings were proper.

Abpikar argues that the immigration court and the BIA lacked jurisdiction because criminal charges against him were pending in federal court. But Abpikar does not cite any authority, and we know of none, to support his claim. Abpikar's argument that removal proceedings were precluded by the doctrine of res judicata also fails. Abpikar bases his res judicata challenge on an order from the immigration court terminating prior removal proceedings without prejudice. The removal proceedings in this case were not precluded by that order because "a dismissal without prejudice is not a decision on the merits for purposes of res judicata." *Oscar v. Alaska Dep't of Educ.*, 541 F.3d 978, 981 (9th Cir. 2008) (internal quotation marks omitted).

## C. The immigration judge and the BIA properly considered Abpikar's 1980 conviction.

Abpikar advances several arguments that the immigration judge and the BIA erred by considering his 1980 conviction for telephoning a bomb threat.[1]   First, Abpikar argues that this conviction is not actually a conviction within the meaning of 8 U.S.C. § 1101(a)(48)(A) because his sentence was suspended.  This argument is unpersuasive.  *See* 8 U.S.C. § 1101(a)(48)(B) ("Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law *regardless of any suspension* of the imposition or execution of that imprisonment . . . ." (emphasis added)).

Abpikar also argues that his conviction was not proved because the immigration judge stated, "I think it's a conviction," at the May 26, 2009 cancellation hearing.  This argument fails because the record reveals that the immigration court relied on documentary evidence of Abpikar's conviction.

Finally, Abpikar mounts several challenges to the validity of his conviction and argues that he did not have an opportunity to advance those arguments before the immigration judge.  But Abpikar's lawyer did dispute the validity of the

---

[1]   Because the BIA did not rely on Abpikar's conviction for petty theft, we need not reach Abpikar's argument that the immigration judge impermissibly considered that conviction.  *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency.").

conviction, and, in any case, "a conviction cannot be collaterally attacked in a deportation proceeding." *Urbina-Mauricio v. INS*, 989 F.2d 1085, 1089 (9th Cir. 1993); *see also Planes v. Holder*, 652 F.3d 991, 995–97 (9th Cir. 2011).

**D.      Abpikar was not deprived of his right to counsel.**

Abpikar argues that the immigration judge never informed him of his statutory right to counsel.  But the record shows that Abpikar affirmatively waived his right to proceed with an attorney.

**E.      The immigration judge did not violate Abpikar's due process rights.**

Abpikar maintains that his due process rights were violated when the immigration court remarked that Abpikar could resolve pending federal criminal charges by pleading guilty to them.  Abpikar has not demonstrated that the court's comment rendered the proceeding "so fundamentally unfair that [he] was prevented from reasonably presenting his case," *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (internal quotation marks omitted), nor has he demonstrated that the comment affected the outcome of the proceeding, *Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003).  Consequently there was no due process violation.

**F.      Whether Abpikar's conviction was for a crime of moral turpitude**

The immigration judge determined that Abpikar was removable pursuant

4

to 8 U.S.C. § 1227(a)(1)(A) because he had been convicted of telephoning a bomb threat, which it determined was a crime of moral turpitude that rendered him inadmissible at the time his status was adjusted to lawful permanent resident. The Board affirmed the immigration judge's determination after concluding that the offense necessarily involves threats of physical violence that are made "willfully and maliciously." Okla. Stat. tit. 21, § 1767.1(A)(7) (1971)). Abpikar argues that the BIA erred. We agree with Abpikar.

In order to determine whether a particular crime involves moral turpitude, this court applies the categorical and modified categorical approaches described in *Taylor v. United States*, 495 U.S. 575 (1990). *See Robles-Urrea v. Holder*, 678 F.3d 702, 707 (9th Cir. 2012); *see also Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). Once the elements of the offense of conviction are established, those elements are compared to the generic definition of "crime involving moral turpitude." *See Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012). The generic definition of "crime involving moral turpitude" is a crime involving "either fraud or base, vile, and depraved conduct that shocks the public conscience." *Nunez v. Holder*, 594 F.3d 1124, 1131 (9th Cir. 2010) (internal quotation marks and brackets omitted).

Section 1767.1(A)(7) is not an offense involving fraud. "Non-fraudulent

5

[crimes involving moral turpitude] almost always involve an intent to harm someone." *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010) (internal quotation marks omitted). Because § 1767.1(A)(7) does not require proof of attendant physical harm or intent to harm, a violation of § 1767.1(A)(7) does not categorically constitute a crime involving moral turpitude. We therefore remand the case for determination of whether Abpikar's particular offense involved moral turpitude under the modified categorical approach.

## G. Whether Abpikar's conviction was for a particularly serious crime

The BIA affirmed the immigration judge's determination that Abpikar was ineligible for asylum and withholding of removal because telephoning a bomb threat was a "particularly serious crime." *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). We review the BIA's determination that an alien was convicted of a "particularly serious crime" for abuse of discretion. *Arbid v. Holder*, 700 F.3d 379, 385 (9th Cir. 2012). Whether a crime is a particularly serious crime generally depends on "'the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstance of the crime indicate that the alien will be a danger to the community.'" *Delgado v. Holder*, 648 F.3d 1097, 1107 (9th Cir. 2011) (en banc) (quoting *In re Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982)).

6

Relying solely on the elements of the crime, the BIA determined that, because the Oklahoma statute under which Abpikar was convicted includes a "willful" and "malicious" intent requirement, Abpikar potentially committed a crime that was "particularly serious" on its face. The BIA then concluded that Abpikar had failed to meet his burden of establishing facts that would preclude such a designation in his case. But in *Blandino-Medina v. Holder*, 712 F.3d 1338, 1346–47 (9th Cir. 2013), this court held that the BIA may not "create additional categories of facially particularly serious crimes."[2] Under *Blandino-Medina*, the BIA may not rely solely on the elements of the crime to determine whether a crime is potentially a serious one and thus whether grounds for denial of withholding of removal and asylum may apply. *Id.* at 1348. Further, the Board erred by failing to consider Abpikar's arguments that his crime was not particularly serious. We therefore remand for a determination of whether Abpikar's conviction was for a particularly serious crime in light of the *Frentescu* factors.

## H. Cancellation of removal

Abpikar challenges the denial of his application for cancellation of removal, arguing that the immigration court erroneously determined that he has not been

---

[2] 8 U.S.C. § 1231(b)(3)(B)(ii) enumerates only a single category of per se "particularly serious crimes"—aggravated felonies for which an alien has been sentenced to at least five years' imprisonment.

rehabilitated.  We do not have jurisdiction to review a discretionary rehabilitation determination.  *See Mejia v. Gonzales*, 499 F.3d 991, 999 (9th Cir. 2007); 8 U.S.C. § 1252(a)(2)(B)(i).  This claim must be dismissed.

We **GRANT** Abpikar's petition in part and **DISMISS** in part.  We **VACATE** the Board of Immigration Appeals' decision and **REMAND** to the Board of Immigration Appeals for reconsideration consistent with this disposition. The parties shall bear their own costs on appeal.