**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RIGOBERTO VLADIMIR DEL CID MARROQUIN, AKA Rigoberto De Cid, AKA Rigo Del Cid, AKA Rigoberto Del Cid, *Petitioner*, | No. 13-71583 Agency No. A029-558-661 |
| v. | OPINION |
| LORETTA E. LYNCH, Attorney General, *Respondent.* | |

On Petition for Review of an Order of the Board of Immigration Appeals

Argued and Submitted March 7, 2016
Pasadena, California

Filed May 18, 2016

Before: Richard R. Clifton and Sandra S. Ikuta, Circuit Judges, and Frederic Block, District Judge.[*]

Per Curiam Opinion

---

[*] The Honorable Frederic Block, Senior U.S. District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of protection under the Convention Against Torture to a citizen of El Salvador who fears torture due to his former gang affiliation and gang-related tattoos.

The panel first held that petitioner's removal from the United States did not moot his petition for review. The panel explained that while granting the petition would not guarantee petitioner's return to the United States, because the government has acknowledged that the Department of Homeland Security has a policy facilitating the return, in certain circumstances, of removed aliens whose petitions for review are granted, it will at least increase his chances of being allowed to do so. The panel concluded that it could therefore provide effective relief and petitioner's removal to El Salvador did not render the petition moot.

The panel held that substantial evidence supported the Board's determination that it is not more likely than not that petitioner will be tortured in El Salvador. The panel explained that although gang membership is illegal under Salvadoran law, petitioner did not establish that the government tortures former gang members or those with gang-related tattoos. In addition, the panel noted that Salvadoran law prohibits extrajudicial killings and violence,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and concluded that there is substantial evidence that the government enforces those laws—albeit imperfectly—against both gang members and rogue police officers.

**COUNSEL**

Leon B. Hazany (argued), Law Firm of Leon Hazany & Associates, Los Angeles, California, for Petitioner.

Richard Zanfardino (argued) and Karen Stewart, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

PER CURIAM:

Rigoberto Vladimir Del Cid Marroquin petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying his application for protection under the Convention Against Torture ("CAT"). We have jurisdiction, *see* 8 U.S.C. § 1252(a)(1); *Garcia v. Lynch*, 798 F.3d 876, 880 (9th Cir. 2015), and deny the petition. We write principally to elucidate our conclusion that Del Cid Marroquin's removal from the United States did not moot his petition.

I

Del Cid Marroquin, a native of El Salvador, illegally entered the United States with his family in 1983, when he was eight years old. Ten years later, he was convicted of two

counts of attempted first-degree murder under California law. He served eighteen and a half years of two consecutive life sentences.

The Department of Homeland Security ("DHS") initiated expedited removal proceedings when Del Cid Marroquin was released from prison in 2011. Because of his convictions, Del Cid Marroquin was ineligible for all forms of relief except deferral of removal under CAT. Although an immigration officer concluded that Del Cid Marroquin did not have a reasonable fear of being tortured in El Salvador, an immigration judge ("IJ") reversed that determination and placed him in "withholding-only" proceedings to adjudicate his CAT claim.

Del Cid Marroquin's claim was based on his status as a former gang member. During his time in the United States, he had joined a predominantly Mexican gang operating in his neighborhood and acquired at least one gang-related tattoo. Although he had renounced his gang affiliation while in prison, he testified that if he returned to El Salvador, he feared being tortured by the national police ("PNC") or vigilante groups as part of a nationwide crackdown on gang activity. He further testified that he feared harm from powerful gangs in El Salvador, who might view him as a "traitor" because of his former membership in a rival gang, his presumed status as a prison informant, or his efforts to convince other gang members to change their ways. He described three interactions with Salvadoran gang members during his incarceration that he perceived as threats on his life should he return to El Salvador.

In support of Del Cid Marroquin's claim, Dr. Thomas W. Ward testified as an expert on social and political conditions

in El Salvador, particularly with respect to gang activity. He explained that the Salvadoran government has enacted legislation—known generally as the *Mano Dura* ("firm hand") initiative— granting PNC officers broad powers to search for, arrest, and detain possible gang members. Dr. Ward testified that he had heard accounts of officers beating detainees, although he did not know the details of any specific incidents. He further conceded that not all officers engage in such conduct: "[A]s in any organization, there are some who follow the rules and some who don't."

Dr. Ward testified that in the 1980s and 1990s, many PNC officers who didn't "follow the rules" joined "death squads" that abducted, tortured and killed gang members. He claimed to have seen reports that these vigilante groups were resurfacing, but could not "speak to how they determine who a potential victim is." Dr. Ward opined that there was a "distinct possibility" that Del Cid Marroquin could be tortured by either PNC officers or a death squad, but was unable to say that it was more likely than not.

Dr. Ward further opined that Del Cid Marroquin had "an over 50 percent chance [of] being beaten, physically assaulted, tortured or killed by enemy gang members because of his past affiliation with what they consider to be an enemy gang." He stated that PNC would be unable to protect him from gang violence because it is "understaffed, inefficient and corrupt," and because "the general attitude of law enforcement to people who have gang tattoos is that they are members of a gang and, therefore, they get what they deserve."

The IJ denied Del Cid Marroquin's application for CAT relief. Although he considered Dr. Ward's testimony, he

found it too anecdotal to support the conclusion that Del Cid Marroquin would more likely than not be tortured in El Salvador. He further found that the Salvadoran government did not acquiesce in violence by either vigilante groups or gangs because it was "taking steps to correct the situation."

The BIA affirmed in a reasoned decision. It concluded that Del Cid Marroquin had "not presented sufficient evidence establishing that it is more likely than not that he would be subject to torture upon return to El Salvador, at the instigation of, or with the consent or acquiescence of, the government." It cited a State Department issue paper introduced before the IJ for the propositions that (1) it is not the policy of the Salvadoran police to arrest or abuse someone for having a tattoo, (2) there have been no reports of police carrying out extrajudicial killings of gang members, and (3) any police involvement in such killings would violate Salvadoran law-enforcement policy. *See* Bureau of Democracy, Human Rights & Labor, U.S. Department of State, *Issue Paper: Youth Gang Organizations in El Salvador* (2007), https://www.justice.gov/eoir/file/ 706271/download. It agreed with the IJ that "[a] government does not 'acquiesce' to torture where the government actively, albeit not entirely successfully, combats the illegal activities."

Del Cid Marroquin petitioned for review on May 3, 2013. After another panel of this Court denied his request for a stay, he was removed to El Salvador on November 19, 2013.

II

Del Cid Marroquin's removal requires us to ask whether his petition is moot. As the Supreme Court recently reiterated, "[i]f an intervening circumstance deprives the

plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (citations and internal quotation marks omitted). "A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (citation and internal quotation marks omitted).

In the immigration context, we have held that a petition for review is mooted by the petitioner's removal from the United States unless there is "some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. INS*, 488 F.3d 1061, 1064 (9th Cir. 2007). In *Kaur v. Holder*, 561 F.3d 957 (9th Cir. 2009), we rejected an argument that a ten-year ban on reentry into the United States constituted a collateral consequence because the petition for review did not challenge the basis for the ban. *See id.* at 959. By contrast, in *Blandino-Medina v. Holder*, 712 F.3d 1338 (9th Cir. 2013), we held that the petitioner's removal did not moot his petition because a favorable ruling would have made it possible—at least hypothetically—for him to obtain a waiver of the ban on reentry. *See id.* at 1342.

Del Cid Marroquin's removal subjects him to the ban on reentry for removed aliens. *See* 8 U.S.C. § 1182(a)(9)(ii). However, he is also inadmissible by virtue of his convictions, which resulted in two life sentences. *See id.* § 1182(a)(2)(B). He is not eligible for a waiver of inadmissibility. *See id.* § 1182(h). Thus, success on his petition would have no effect on his future admissibility to the United States.

We directed the parties to submit supplemental briefs identifying any other possible collateral consequences. In

response, the government asserted that DHS might "parole" Del Cid Marroquin into the United States if he prevailed on his CAT claim. Although the regulation it cited, 8 C.F.R. § 1208.17, does not specifically deal with removed aliens, DHS does have a policy facilitating the return, in certain circumstances, of removed aliens whose petitions for review are granted. *See* ICE Policy Directive 11061.1 (Feb. 24, 2012), https://www.ice.gov/ doclib/foia/dro_policy_memos/ 11061.1_current_policy_facilitating_return.pdf.[1] Pursuant to the policy, the government will, "[a]bsent extraordinary circumstances," facilitate the return of a removed alien whose petition for review is granted "if either the [circuit] court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings." *Id.* ¶ 2. In addition, it will facilitate the return of a removed alien "whose PFR was granted [and who] is granted relief by [the Executive Office for Immigration Review] or [DHS] allowing him or her to reside in the United States lawfully." *Id.*

We solicited a second round of supplemental briefing to ascertain how ICE Policy Directive 11061.1 would apply to Del Cid Marroquin. In a letter brief dated April 5, 2016, the government stated that "ICE ordinarily would facilitate the return of an alien who prevailed on a petition for review challenging the denial of CAT protection if the court of appeals directed an outright grant of CAT protection." In further explaining this policy, the government stated that "[t]he caveat 'ordinarily' is needed in light of the possibility of intervening factual developments which would counsel against return of a CAT deferral grantee, such as the alien's

---

[1] ICE—Immigration and Customs Enforcement—is an agency within DHS.

firm resettlement in a third country."  The government also stated that if the BIA were to "reverse the Immigration Judge's decision and find, in light of the overlooked evidence, that Petitioner is entitled to CAT deferral protection," or if the BIA remanded for further proceedings before the IJ, "ICE ordinarily would facilitate Petitioner's return."  We append the government's full letter brief to this opinion.

In sum, while granting Del Cid Marroquin's petition will not guarantee his return to the United States, it will at least increase his chances of being allowed to do so.  Thus, we can provide effective relief and his removal to El Salvador does not render the petition moot.

## III

Although the BIA rendered a reasoned decision, it made repeated references to its agreement with the IJ.  "In such situations, we review the decision of the BIA and look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion."  *Delgado v. Holder*, 563 F.3d 863, 866 (9th Cir. 2009) (citation and internal quotation marks omitted).  We review the BIA's legal conclusions de novo.  *See Edu v. Holder*, 624 F.3d 1137, 1142 (9th Cir. 2010).  We review its factual findings for substantial evidence, *see id.*, and may not reverse unless "the evidence not only *supports* [a contrary] conclusion, but *compels* it."  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

Substantial evidence supports the BIA's finding that it is not more likely than not that Del Cid Marroquin will be tortured in El Salvador.  Although gang membership is illegal under Salvadoran law, Del Cid Marroquin did not establish

that the government tortures former gang members or those with gang-related tattoos.  In addition, Salvadoran law prohibits extrajudicial killings and violence, and there is substantial evidence that the government enforces those laws—albeit imperfectly—against both gang members and rogue police officers.

With respect to private violence, the BIA's decision rests on a correct understanding of government "acquiescence" in torture.  It cited *Zheng v. Ashcroft*, 332 F.3d 1186 (9th Cir. 2003), in which we explained that the proper inquiry is whether "public officials demonstrate willful blindness to the torture of their citizens by third parties." *Id.* at 1196 (internal quotation marks omitted).  In addition, the BIA's statement that "[a] government does not 'acquiesce' to torture where the government actively, albeit not entirely successfully, combats the illegal activities" is consistent with our statement in *Garcia-Milian v. Holder*, 755 F.3d 1026 (9th Cir. 2013), that a government "does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it." *Id.* at 1034 (citation and internal quotation marks omitted).

**PETITION FOR REVIEW DENIED.**



**U.S. Department of Justice**

Civil Division

TJS:RMZ:rmz
DJ 39-12C-42746.03                    5 April 2016

_____

*Washington, DC 20530*

Molly C. Dwyer, Clerk of Court
United States Court of Appeals
  for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103-1526

**TRANSMITTED VIA CM/ECF**

RE:  Marroquin v. Lynch
13-71583 (9th Cir.); A029-558-661

Respondent hereby responds to this Court's Order dated March 22, 2016,

which directs the parties to submit supplemental letter briefs addressing the

following two issues:  (1) whether, pursuant to the Department of Homeland

Security's ("DHS") "facilitation of return" policy, ICE Policy Directive 11061.1

(Feb. 24, 2012),[1] DHS's Immigration and Customs Enforcement ("ICE") would

facilitate Petitioner's return to the United States, if his petition for review were

granted; and (2) "whether deferral of removal under the Convention Against

Torture is relief 'allowing [the petitioner] to reside in the United States lawfully,'

within the meaning of the policy."  Order (March 22, 2016).  Both questions bear

---

[1] Available at:
https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf

- 2 -

on whether the petition for review is moot, in light of Petitioner's removal to El Salvador. As explained below, ICE's facilitation of return policy provides an avenue for meaningful redress, should the Court rule in Petitioner's favor on his challenge to the agency's denial of deferral of removal under the Convention Against Torture ("CAT"). The possibility of such redress counsels against a finding of mootness.

## I.     Possibility of Parole Pursuant to ICE Policy Directive 11061.1

The ICE policy provides, in pertinent part:

Absent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her PFR [petition for review] was pending, ICE will facilitate the alien's return to the United States if either the court's decision restores the alien to lawful permanent resident status (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings. ICE will regard the returned alien as having reverted to the immigration status he or she held, if any, prior to the entry of the removal order and may detain the alien upon his or her return to the United States. If the presence of the alien who prevails on his or her PFR is not necessary to resolve the administrative proceedings, ICE will not facilitate the alien's return. However, if, following remand by the court to the Executive Office for Immigration Review (EOIR), an alien whose PFR was granted and who was not returned to the United States is granted relief by EOIR or [DHS] allowing him or her to reside in the United States lawfully, ICE will facilitate the alien's return to the United States.

*See* ICE Policy Directive 11061.1 (Feb. 24, 2012).

- 3 -

Petitioner has never held lawful permanent resident status, and therefore, the provisions in the policy requiring facilitation of return following restoration of that status are inapplicable to his case. However, ICE officials have informed undersigned counsel of several scenarios whereby ICE potentially would facilitate his return. First, ICE ordinarily would facilitate the return of an alien who prevailed on a petition for review challenging the denial of CAT protection if the court of appeals directed an outright grant of CAT protection. The caveat "ordinarily" is needed in light of the possibility of intervening factual developments which would counsel against return of a CAT deferral grantee, such as the alien's firm resettlement in a third country.[2] A decision not to facilitate return in those circumstances would be consistent with 8 C.F.R. § 1208.16(f), which permits removal of an alien "to a third country other than the country to which removal has been withheld or deferred." The Government's treaty obligations under CAT do not require return of Petitioner to the United States if he has already obtained a safe haven from torture in a third country. However, we have no reason to believe in this case that Petitioner has resettled in a country other

---

[2] Firm resettlement in a third country is only one of many possible factual developments which could lead ICE to decline to facilitate the return of an alien who was granted CAT deferral protection. As a general matter, ICE's decision whether to facilitate the return of any alien is heavily dependent on the facts of the case.

- 4 -

than El Salvador, and his counsel represented at oral argument that he has remained in that country.

Second, as stated by the policy, ICE would facilitate Petitioner's return "if his presence is necessary for continued administrative proceedings."  Return under that provision is heavily dependent on the precise contours of the Court's remand order, and the decision of the Board of Immigration Appeals ("Board") upon remand.   If, for example, the Court remands the case because it finds that the Board failed to address certain evidence in the record, ICE likely would not facilitate Petitioner's return before the Board acted, because, as the policy indicates, his presence would not be "necessary to resolve the administrative proceedings."   Rather, ICE would wait to see how the Board ruled on remand:  (1) the Board could again affirm the denial of CAT deferral protection; (2) it could reverse the Immigration Judge's decision and find, in light of the overlooked evidence, that Petitioner is entitled to CAT deferral protection; or (3) it could remand for further proceedings before the Immigration Judge.  ICE ordinarily would facilitate Petitioner's return, pursuant to its return policy under scenarios (2) or (3).  If, however, the Board again found Petitioner ineligible for CAT protection, ICE would not facilitate his return.

At bottom, ICE's decision whether to facilitate Petitioner's return to the United States hinges on whether the Court's decision, and any subsequent Board

- 5 -

decision upon remand, resolves the issue of his eligibility for CAT deferral protection in his favor, or requires his presence for further evidentiary proceedings before the Immigration Judge. Either way, the substantive content of the Court's decision will have a real and immediate impact on Petitioner's ability to return to the United States, which signals that the case is not moot.[3]  In this regard, we note that in *Kaur v. Holder*, 561 F.3d 957 (9th Cir. 2009), the Court did not have occasion to consider the possibility of the alien's return to the United States through parole or other means, because ICE had not yet promulgated its return policy in ICE Directive 11061.1.  Thus, in finding the petition filed by petitioner Cheema (Kaur's husband) moot, the Court looked only to the permanent bar to reentry rising from the agency's unchallenged finding that Cheema was an alien

---

[3]  Even if ICE determined that Petitioner's return was not required by Directive 11061.1 because, for example, the problem identified by the Court could be remedied through issuance of a new Board decision, the Court's decision would have a real and substantive impact on Petitioner, as his position before the Board on remand would be different than it was, prior to the petition for review.  In this respect, the mootness question arguably could be analogized to the assessment of prevailing party status, for purposes of attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  That is, if Petitioner succeeded on his petition for review and sought attorney's fees under the EAJA, Respondent would be hard-pressed to argue that Petitioner was not a "prevailing party," as there would be a material change in the parties' positions.  *See Buckhannon Bd. And Care Home, Inc.v. West Virginia Dept. of Health and Human Serv.*, 532 U.S. 598, 604-06 (2001) (to qualify as a "prevailing party," the claimant must achieve a "material alteration of the legal relationship of the parties," and that alteration must be "judicially sanctioned."); *see also Carbonell v. INS*, 429 F.3d 894, 898 (9th Cir. 2005).  It would be anomalous to hold that a case was moot as to an alien who had achieved a material alteration in his position before the agency.

- 6 -

who had engaged in terrorist activities. *Id.* at 959-60, citing 8 U.S.C. § 1182(a)(3)(B)(i)(I). The possibility of parole pursuant to ICE Directive 11061.1 puts this case on a different footing than *Kaur*.

**II.      Deferral Of Removal Provides Country-Specific Protection From Removal And, As Such, Is Covered By ICE Policy Directive 11061.1**

The Court has also asked whether CAT deferral would constitute "relief 'allowing [the petitioner] to reside in the United States lawfully," for purposes of ICE Policy Directive 11061.1. As a threshold matter, even had Petitioner not been removed to El Salvador, a grant of CAT deferral would not constitute immigration "relief," in the sense of a conferral of status in the United States. *See* 8 C.F.R. § 1208.17(b)(1) (requiring an Immigration Judge to advise a successful CAT deferral applicant that deferral protection "[d]oes not confer upon the alien any lawful or permanent immigration status in the United States"). When an alien prevails on a CAT application, he or she is accorded only protection from removal to the country to which removal has been withheld or deferred. 8 C.F.R. § 1208.16(f). The removal order remains intact, and the alien may be removed to a third country which is willing to accept him. So too, the alien may be removed to the country to which removal has been deferred if the Secretary of State obtains diplomatic assurances that the alien will not be tortured in that country. 8 C.F.R. § 1208.18(c). Thus, it would be inaccurate to characterize a grant of CAT deferral protection as "relief," or a form of lawful residence.

- 7 -

This much said, undersigned counsel has been informed by ICE that an alien with a grant of CAT deferral protection is permitted to be present in the United States pursuant to the regulations implementing the CAT, *see generally Huang v. Ashcroft*, 390 F.3d 1118, 1121 (9th Cir. 2004), and, as such, would be eligible for return under ICE Policy Directive 11061.1.  This would be the case, regardless of whether ICE decided to detain the alien following his parole.  Moreover, a nondetained alien who has been granted CAT deferral protection can seek employment authorization under 8 C.F.R. § 274a.12(c)(18).[4]  Such authorization obviously is not akin to legal status in the United States, but it does signal that the alien is authorized to be present in the country.

---

[4]  8 C.F.R. § 274a.12(c)(18) permits employment authorization for aliens who are subject to a final order of removal and have been released on an order of supervision, where the removal order cannot be executed for a variety of reasons.

- 8 -

**CONCLUSION**

Respondent continues to maintain that this petition for review is not moot, notwithstanding Petitioner's removal to El Salvador.  Petitioner continues to have a real and substantial stake in the outcome of the Court's decision on the merits of his challenge to the agency's denial of CAT deferral protection, as ICE's Policy Directive 11061.1 may result in ICE facilitating his return to the United States, depending on the substantive content of the Court's decision, and any decision by the Board upon remand.  As Respondent has previously argued, any other approach would frustrate Congress's intent in amending the Immigration and Nationality Act ("INA") to eliminate automatic stays of removal, pending judicial review.  *See Zazueto-Carrillo v. Ashcroft*, 322 F.3d 1166, 1171 (9th Cir. 2003).  IIRIRA contemplates that ICE will remove aliens without delay after an unfavorable Board decision, and allows aliens to continue to litigate their cases from abroad.  If such removals divested the Court of jurisdiction, the Court would need to decide the merits of each petition for review challenging a CAT denial when resolving a motion to stay removal – a shift that would mark a significant departure from this Court's current approach to stay litigation, and which would abrogate the stay standard announced by the Supreme Court in *Nken v. Holder*, 556 U.S. 418 (2009), which requires the alien to make a strong showing of likelihood of success on the merits, but does not require him to actually win his case at the

- 9 -

stay litigation phase.  Such a dramatic change in Ninth Circuit stay litigation is

unnecessary, however, because the possibility of the alien's parole into the United

States pursuant to ICE Policy Directive 11061.1 defeats any claim of mootness.

Sincerely,

/s/ Richard Zanfardino
RICHARD ZANFARDINO
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 305-0489