**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

AUG 12 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSE YUDIEL MEJIA-ROSAS, AKA Jose Mejia, AKA Jose Yudiel Mejia, <br><br> Petitioner, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> Respondent. | No. 19-70594 <br><br> Agency No. A094-372-332 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 10, 2020**
Pasadena, California

Before: CALLAHAN and BUMATAY, Circuit Judges, and M. WATSON,***
District Judge.

After being convicted of robbery and serving a prison sentence, Mejia-Rosas

was ordered removed by an immigration judge ("IJ") for being "an[] alien who is

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Michael H. Watson, United States District Judge for
the Southern District of Ohio, sitting by designation.

convicted of an aggravated felony at any time after admission" to the country. 8 U.S.C. § 1227(a)(2)(A)(iii). Mejia-Rosas applied for deferral of removal under the Convention Against Torture ("CAT"). 8 C.F.R. § 1208.17. Although the IJ granted his application, the Board of Immigration Appeals reversed on appeal. Mejia-Rosas now petitions this court for review of the Board's decision. We review a determination of CAT eligibility for substantial evidence, and we will reverse "only if the evidence is so compelling that no reasonable fact finder could have failed to find the requisite likelihood of torture." *Singh v. Ashcroft*, 351 F.3d 435, 442 (9th Cir. 2003); *see also Lopez v. Sessions*, 901 F.3d 1071, 1078 (9th Cir. 2018) ("To qualify for deferral [of removal under the CAT], an alien must establish that he 'is more likely than not to be tortured.'" (quoting 8 C.F.R. § 1208.17)).

Substantial evidence supports the Board's determination that Mejia-Rosas has failed to carry his burden of proving a likelihood of torture if he is returned to Mexico or El Salvador. Mejia-Rosas's application was based entirely on the fact that he has tattoos identifying his affiliation with the Norteños, a California-based gang of which he was formerly a member. He argues that there are three groups who are likely to see his tattoos, understand what they signify, and be motivated to torture him as a result: (1) members of his own gang, or a rival gang such as the Sureños; (2) other gangs in Mexico or El Salvador; and/or (3) police or military

2

officials in Mexico and El Salvador.  Based on the evidentiary record, we are not compelled to reach a conclusion contrary to the Board's.

1.      No evidence supports Mejia-Rosas's claims that the Norteños or one of its rivals, such as the Sureños, have a meaningful presence in Mexico or El Salvador or that the Norteños have "strong *ties* to the cartels in Mexico."  Indeed, when Mejia-Rosas was asked how Norteños gang members (or former members like himself) could be harmed in Mexico, he said only that "Sureños would see [his] tattoos and they automatically know [he's] a rival gang member so they would attack."  But the record evidence shows that the Sureños are a *California-*based street gang—a fact that Mejia-Rosas himself recognized.[1]  Mejia-Rosas declared that it is a "known and proven fact" that Sureños "foot soldiers" operate in Tijuana and other cities and states in Mexico, but he presented no evidence of this, and his own country-conditions expert did not identify the Sureños as having any presence in Mexico.  Likewise, Mejia-Rosas's country-conditions expert on El Salvador mentioned only the presence of MS-13 and the 18th Street Gang—not the

---

[1] There was testimony about the "Mexican Mafia," which is apparently affiliated with the Sureños and is a rival to Mejia-Rosas's former gang.  But despite its name, the Mexican Mafia is based in the United States and was not identified by Mejia-Rosas's expert as a gang with a presence in Mexico.

Sureños or other rivals to the Norteños.[2] Substantial evidence therefore supports the Board's conclusion that the Norteños and rival gangs "do not operate throughout Mexico and El Salvador," such that Mejia-Rosas could not safely avoid them. *See Nuru v. Gonzales*, 404 F.3d 1207, 1219 (9th Cir. 2005) (explaining that the ability to safely relocate is relevant to likelihood of future torture); 8 C.F.R. § 1208.16(c)(3)(ii).

2. Substantial evidence also supports the Board's conclusion that Mejia-Rosas has not shown a likelihood that Mexican or Salvadorian gangs would recognize his tattoos as gang-affiliated and torture him as a result. In support of this claim, Mejia-Rosa presented only generalized evidence about the country conditions in Mexico and El Salvador. We have previously upheld the denial of CAT protection where applicants relied on similarly generalized claims of fear or a series of worst-case possibilities strung together. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051–52 (9th Cir. 2008) (upholding CAT denial where evidence failed to show a particularized threat to the applicant); *Blandino-Medina v. Holder*, 712 F.3d 1338, 1348 (9th Cir. 2013) (substantial evidence supported Board's reversal of IJ's CAT determination where applicant "rather than presenting hard

---

[2] This expert identifies a subsect of the 18th Street Gang in El Salvador adopting the name "18 Sureños," but there is no evidence that this is the same group as, or even related to, the California-based gang that feuds with the Norteños. And besides Mejia-Rosas's own testimony, there is no evidence that these Salvadorian gangs are rivals with the Norteños.

4

evidence . . . merely presented a series of worst-case scenarios").

   3. Mejia-Rosas's claim that the Mexican or Salvadorian police are likely to torture him because of his tattoos is similarly speculative. Mejia-Rosas again relies entirely on generic, country-condition evidence about violence in Mexico and El Salvador. Such generalized evidence, absent more particularized proof that Mejia-Rosas himself is threatened, does not compel us to reach a different conclusion than the Board's. *See Dhital*, 532 F.3d at 1051–52*; see also Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curium) ("Petitioners' generalized evidence of violence and crime in Mexico is not particular to Petitioners and is insufficient to meet this standard"). This is particularly true given that Mejia-Rosas's evidence shows that, at most, *active* gang members are subject to police targeting, not that having gang tattoos itself exposes someone like Mejia-Rosas to similar targeting from the police or military. Indeed, one of the articles he cites is a biography of a reformed gang member living an ostensibly successful life in El Salvador.[3] Accordingly, substantial evidence supports the Board's decision to deny Mejia-Rosas CAT protection. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th Cir. 2016) (per curiam) (affirming denial of CAT protection for lack of evidence El Salvador tortures those with gang tattoos).

---

[3] The man profiled has gang tattoos covering his arms but is studying to become a lawyer while working for a Salvadorian company that helps reintegrate former gang members into society.

For the foregoing reasons, Mejia-Rosas's petition is **DENIED.**