

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEX HERNANDEZ, AKA Louie Gonzalez, AKA Louis Gonzalez, AKA Alex Jovanoe Hernandez, AKA Joseph Ramirez, | No. 17-73332 |
| | Agency No. A206-352-451 |
| Petitioner, | |
| | MEMORANDUM* |
| v. | |
| WILLIAM P. BARR, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 17, 2020
San Francisco, California

Before: SCHROEDER, W. FLETCHER, and HUNSAKER, Circuit Judges.
Dissent by Judge HUNSAKER

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Alex Hernandez petitions for review of a decision by the Board of Immigration Appeals ("BIA") holding that he is ineligible for relief under the Convention Against Torture ("CAT"). We grant the petition.

Hernandez is a native of Honduras subject to a removal order. While incarcerated in California for a robbery conviction, Hernandez achieved a position of influence within the Sureños prison gang. When he left the gang in 2008, gang members assaulted him and he nearly lost an eye because he had left the gang. MS-13 (Mara Salvatrucha) and Barrio 18 (18th Street Gang), the two main gang structures in Honduras, have close ties to the Sureños and routinely pursue and kill those who leave the gang without permission. Hernandez has gang tattoos that permit easy identification as a member or former member of the Sureños. He presented evidence that he will likely be tortured or killed in Honduras, either because he left the gang or because the gangs would incorrectly perceive him to be a member of a rival gang, and that law enforcement officials in Honduras would acquiesce in his torture or killing. He also presented evidence that he would be tortured or killed by law enforcement officials in Honduras who believe he is still in a gang.

The record contains uncontradicted evidence that the Honduran police force is one of the most corrupt and mistrusted in Latin America. The government has

"no control" over some areas of Honduras because they are "wholly" controlled by gangs. Though the Honduran government has tried to reduce gang violence, arrest gang leaders, and end corruption in law enforcement, these efforts have met with limited success.[1]

The Immigration Judge ("IJ") granted Hernandez's CAT claim, finding that it was more likely than not that Honduran gangs would torture Hernandez, with the acquiescence of government officials. The IJ did not reach the question of whether it was more likely than not that government officials would themselves conduct, or participate in, torture of Hernandez. The BIA reversed. "Even assuming" that private actors would "seek [Hernandez] out for torture," the BIA concluded that government officials would not acquiesce under 8 C.F.R. § 1208.18(a)(1). The BIA emphasized that the Honduran federal government has tried, albeit unsuccessfully, to stop gang violence. It then explained that "unlawful violence committed by individuals over whom the government has no reasonable control does not mean that an applicant has carried his burden of proof for protection where the government is actively trying to combat gang activity." The BIA did not address whether government officials were likely to participate in torture of

---

[1] Hernandez's Unopposed Motion for Judicial Notice (ECF No. 33) as to two country conditions reports is GRANTED.

Hernandez because it held that Hernandez had failed to make this argument on appeal to the BIA.

We review the BIA's legal conclusions de novo. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). We review its factual findings for substantial evidence. A finding is not supported by substantial evidence when "'any reasonable adjudicator would be compelled to conclude to the contrary' based on the evidence in the record." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

1. Government Acquiescence: In arriving at its conclusion that there was no government acquiescence, the BIA employed the incorrect legal standard. Acquiescence under CAT occurs when a public official "simply [stands] by because of [his] inability or unwillingness to oppose it." *Bromfield v. Mukasey*, 543 F.3d 1071, 1079 (9th Cir. 2008). An applicant for CAT relief must show only that "public officials at any level—even if not at the federal level" would acquiesce to torture. *Parada v. Sessions*, 902 F.3d 901, 916 (9th Cir. 2018).

Substantial evidence does not support the BIA's conclusion that Hernandez has not shown that relevant government officials in Honduras will acquiesce in his torture. The Country Reports—which the government itself introduced in this case—provide uncontroverted evidence that local law enforcement is unable to

control the gangs. The IJ noted that there are "areas within the country that the government has no control over and that the gangs wholly control." In these areas, police either are not present or are unable to offer protection. The evidence plainly demonstrates that a government officials in those areas of Honduras would acquiesce in Hernandez's torture and that Hernandez would very likely be in those areas.

However, the BIA only "assum[ed]" that gang members would likely seek Hernandez out for torture. It did not state whether it found clear error in the IJ's finding that, in light of his past affiliation with the Sureños and his visible gang tattoos, gang members would actually do so. The proper course, therefore, is for us to remand to the BIA so that it may decide this question in the first instance. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

2. Government participation: The IJ expressly reserved the question of whether government officials would conduct, or participate in, Hernandez's torture. Hernandez, appearing pro se, argued sufficiently in his brief to the BIA that torture by government officials would occur. The BIA therefore erred in holding that Hernandez waived this argument. In the event that the BIA concludes on remand that there is insufficient evidence that gang members are likely to torture Hernandez, the BIA should remand to the IJ for a determination whether

5

Hernandez has shown a likelihood of torture by a government official. *See* 8

C.F.R. § 1003.1(d)(3)(iv) (BIA may not "engage in factfinding in the course of

deciding appeals").

**Petition for review GRANTED and REMANDED.**

*Hernandez v. Barr*, No. 17-73332

HUNSAKER, Circuit Judge, dissenting:

I agree that we must remand petitioner Alex Hernandez's Convention Against Torture (CAT) claim so the agency can determine in the first instance whether he has shown a likelihood of torture by a government official directly. But I disagree that the BIA erred in (1) interpreting the term "acquiescence" in 8 C.F.R. § 208.18(a)(1) and (2) concluding that Hernandez had not proven a likelihood that public officials would acquiescence in torturous conduct by private actors.

## I.     The acquiescence standard

A CAT applicant must show that it is more likely than not that he would be tortured upon removal. 8 C.F.R. § 208.16(c). Torture is defined as "severe pain or suffering" that is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 208.18(a)(1). Because the definition of "torture" encompasses government "acquiescence," it is the applicant's burden to show a likelihood—a greater than 50% chance—that public officials will acquiesce to torture. *See Hamoui v. Ashcroft*, 389 F.3d 821, 827 (9th Cir. 2004).

Acquiescence occurs when a public official has prior awareness of torturous activity and "thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." *Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003)

1

(quoting 8 C.F.R. § 208.18(a)(7)). Stated another way, acquiescence is when "public officials demonstrate 'willful blindness' to the torture of their citizens by third parties." *Id.* at 1195.

The BIA rejected the IJ's finding that Hernandez had established "acquiescence" because the Honduran government had been "*unable to stop gang violence*." The BIA explained "it is well-settled that unlawful violence committed by individuals over whom the government has no reasonable control does not mean that an applicant has carried his burden of proof for protection where the government is actively trying to combat gang activity." This was not error. We have held that acquiescence is not established where a government is aware of torturous activity by private parties and "actively, albeit not entirely successfully, combats the illegal activities." *Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th Cir. 2016) (per curiam) (internal quotation marks omitted); *see also Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014). Acquiescence requires something more—evidence that officials are failing to intervene due to "corruption or other inability or unwillingness to oppose criminal organizations." *Garcia-Milian*, 755 F.3d at 1034; *see also Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) ("We have reversed agency determinations that future torture is not likely only when the agency failed to take into account significant evidence establishing *government complicity*

2

in the criminal activity.") (emphasis added). Thus, the BIA identified the correct legal standard in this case.

## II.    Substantial evidence

Applying the correct legal standard, the BIA found that evidence of record shows the Honduran government has taken "significant efforts to combat gang[]" violence, undermining Hernandez's claim that public officials will deliberately turn a blind eye to torture if he is removed. To reverse this finding, we must determine "that the evidence not only *supports* a contrary conclusion[] but *compels* it—and also compels the further conclusion that the petitioner meets the requisite standard for obtaining relief." *Sanjaa v. Sessions*, 863 F.3d 1161, 1164 (9th Cir. 2017) (internal quotation and editing marks omitted).

While I do not dispute that there is evidence of record supporting Hernandez's government-acquiescence claim, I disagree that the record *compels* such a finding where there also is evidence that Honduran officials have taken steps to fight gang violence throughout the country, including overhauling and expanding its police force, seizing gang-owned property, and prosecuting extortionists and other gang actors. Indeed, it is worth noting that the UNHCR report on which Hernandez heavily relies was issued in mid-2016, predating the majority of the record evidence about Honduras's ongoing efforts to combat gang violence and corruption.

For the foregoing reasons, I respectfully dissent in part and would grant the petition and remand only as to Hernandez's claim that he is likely to be tortured directly by government officials, which the agency has not yet addressed.