NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 2 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SALITO JOAQUIM DA CRUZ CHILUVANE, | No. 19-70377 |
| Petitioner, | Agency No. A088-735-590 |
| v. | MEMORANDUM* |
| WILLIAM P. BARR, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 6, 2020
Seattle, Washington

Before: CALLAHAN and CHRISTEN, Circuit Judges, and RAKOFF,** District Judge.

Salito Joaquim Da Cruz Chiluvane (Chiluvane), a native and citizen of

Mozambique, petitions for review of the Board of Immigration Appeals (BIA)'s

determination that he had been convicted of a particularly serious crime (PSC),

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

which pretermitted his application for asylum and withholding of removal, and the BIA's denial of protection under the Convention Against Torture (CAT).[1] We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.[2]

We review questions of law de novo and factual findings for substantial evidence. *Davila v. Barr*, 968 F.3d 1136, 1141 (9th Cir. 2020). For a petitioner to prevail under the substantial evidence standard, the petitioner must show that the evidence compels the conclusion that these findings are erroneous. *Id.* Where the BIA incorporates the Immigration Judge (IJ)'s analysis as its own, we review both the decisions of the BIA and the IJ. *Ahir v. Mukasey*, 527 F.3d 912, 916 (9th Cir. 2008). We lack jurisdiction over the BIA's discretionary determination that an alien committed a particularly serious crime. 8 U.S.C. § 1252(a)(2)(B)(ii); *Flores-Vega v. Barr*, 932 F.3d 878, 884 (9th Cir. 2019). "But we retain jurisdiction to determine whether the BIA applied the correct legal standard." *Id.* (internal quotation marks omitted). The BIA's determination of whether an alien's crime is

---

[1]     Because the parties are familiar with the facts, we restate only those necessary to explain our decision.

[2]     At oral argument, the DHS asserted for the first time that the Court may lack jurisdiction because Petitioner has been removed. However, "[a]bsent extraordinary circumstances," Immigration and Customs Enforcement (ICE) will facilitate the return of a removed alien whose petition for review is granted "if [] the court's decision restores the alien to lawful permanent resident (LPR) status." *See* ICE Policy Directive 11061.1 (Feb. 24, 2012), https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf. Thus, Chiluvane's removal does not render the petition moot. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 936 (9th Cir. 2016).

a PSC is reviewed under an abuse of discretion standard. *Id.* (citing *Arbid v. Holder*, 700 F.3d 379, 385 (9th Cir. 2012)). "In particular, we review whether 'the agency relied on the appropriate factors and proper evidence to reach [its] conclusion.'" *Id.* (quoting *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015)).

Chiluvane contends that in making its PSC determination, the BIA impermissibly considered his history of abuse of his wife and evidence of the long-lasting psychological harm and the fear it caused her. However, "the BIA may consider 'all reliable information' in determining whether a crime constitutes a particularly serious crime, which is a wide-reaching inquiry and includes consideration of conviction records, sentencing information, and 'other information outside the confines of a record of conviction.'" *Bare v. Barr*, 975 F.3d 952, 964 (9th Cir. 2020) (internal citation omitted). This includes "evidence about the alien which does not go to an element of the crime 'as part of the separate determination of dangerousness.'" *Id*. at 965 (internal citation omitted). Here, although evidence of Chiluvane's history of abuse and the harm and fear it caused were outside the record of his conviction, the BIA permissibly considered such evidence as part of the determination of dangerousness.

Chiluvane also claims that the BIA failed to consider his mental health at the time of his commission of the offense, in contravention of *Gomez-Sanchez v.*

*Sessions*, 892 F.3d 985 (9th Cir. 2018). However, the BIA did consider his mental health. It reviewed and agreed with the IJ's decision, which explicitly considered Chiluvane's mental health at the time of his commission of the offense, ultimately determining that his mental health condition did not counteract the circumstances surrounding his conviction. Here, the BIA relied on the "appropriate factors and proper evidence" to conclude that Chiluvane committed a PSC. *See Flores-Vega*, 932 F.3d at 885 (also stating "[i]t is not our role to reweigh the evidence and reach our own determination about the crime's seriousness") (internal citation omitted).

Chiluvane argues that his CAT claim should be remanded to a different IJ because the IJ's findings amounted to an adverse credibility determination based on inconsistencies between his testimony and the record. However, the IJ did not make an adverse credibility determination. Rather, she accepted that where a mental health concern may affect the reliability of a petitioner's testimony, an IJ generally accepts that the petitioner subjectively believes what he has presented. *See Matter of J-R-R-A*, 26 I. & N. Dec. 609, 612 (B.I.A. 2015). The IJ focused on whether the proffered objective evidence demonstrated any likelihood of future torture. We find that the BIA's decision is adequately supported by the record and does not compel reversal.

First, the IJ found insufficient evidence that a police officer caused Chiluvane's brain injury. The IJ noted that even Chiluvane himself conceded that

the source of the brain injury was unclear. At one point during his testimony, he indicated that being hit by a door caused his mental health issues, and there are reports that his cognitive problems did not emerge until after this door incident. Also, his mother wrote a letter stating that Chiluvane had an accident and suffered a skull fracture in 2002, five years after his 1997 encounter with the police.

Second, regarding Chiluvane's allegations of police beatings when he was caught begging, the IJ noted that Chiluvane testified that he did not have a clear recollection of these events and his own expert characterized him as a poor historian. The IJ looked to the record for corroboration but found little there to corroborate Chiluvane's assertions. We find that the record does not compel reversal of the IJ's finding that he did not meet his evidentiary burden. Even taking Chiluvane at his word, he has not shown that his "severe pain or suffering was specifically intended." *See Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir. 2008).

Third, the IJ accepted Chiluvane's subjective belief that he was beaten and restrained in the mental hospital in Mozambique, but also considered medical evidence, country conditions evidence, and letters from Chiluvane's family members. The IJ noted that the only corroborating evidence of mistreatment in the mental hospital was a letter from his mother indicating that she once noticed marks on his body consistent with restraints. The record indicates that Chiluvane

received a diagnosis, treatment, and care, even if not on par with international standards, and does not compel a finding of torture. Indeed, there is little to suggest that the hospital staff's treatment was specifically intended to inflict severe pain and suffering. *See id.*

Finally, Chiluvane has not shown that he is more likely than not to be tortured in the future. Though Chiluvane's family has limited financial means, the record is not clear that Chiluvane will not obtain medication, or that lack of medication will lead to his mistreatment by police and mental hospital staff. *See In re J-F-F-*, 23 I. & N. Dec. 912, 919 (A.G. 2006) (finding that "[i]f one cannot know from the evidence whether he will have access to medication, then respondent has by definition failed to show he is more likely than not to be denied access"). Under the substantial evidence standard for factual findings, "[e]ven if we might have reached a conclusion different from that reached by the BIA, we may not reverse unless we determine that any reasonable factfinder would have been compelled to reach that conclusion." *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007). We find that the record does not compel reversal of the denial of Chiluvane's CAT claim.

**PETITION DENIED**.