NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 26 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SANDOR MAURICIO TOBAR-RAMIREZ, Petitioner, v. MERRICK B. GARLAND, Attorney General, Respondent. | No.    18-73158 Agency No. A202-081-073 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 1, 2021**
Pasadena, California

Before:  SILER,*** HURWITZ, and COLLINS, Circuit Judges.

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*        The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Sandor Tobar-Ramirez, a native and citizen of El Salvador, petitions for review of two decisions by the Board of Immigration Appeals ("BIA") dismissing his appeals from the decisions of an Immigration Judge ("IJ") denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Reviewing the BIA's "legal conclusions de novo and its factual findings for substantial evidence," *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc) (citations omitted), we deny the petition in part and grant it in part.

1. Substantial evidence supports the BIA's determination that Tobar failed to establish a nexus between any past or feared future persecution and an imputed political opinion. Tobar testified that he was neither politically active nor a member of any political party, and proffered no evidence that gang members or police officers targeted him for political reasons. The BIA was not required to infer political motive by his alleged persecutors. *See Singh v. Holder*, 764 F.3d 1153, 1160-61 (9th Cir. 2014).

2. Before the agency, Tobar also argued that he was persecuted on account of his membership in two particular social groups ("PSGs"): (1) "individuals who are persecuted by gang members who threaten them with death and force them to relocate from their domicile"; and (2) "abandoned children who have been targets of gangs, and government cannot protect them." The BIA found neither PSG

2

cognizable because both were "based solely and circularly on the shared experience of persecution." The BIA's rejection of the first PSG is consistent with our precedent, as that group was "defined exclusively by the fact that its members have been subjected to harm." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1086 (9th Cir. 2020) (cleaned up). In his opening brief, Tobar emphasizes that his first PSG concerns individuals with domiciles in territory controlled by a particular gang. But, because Tobar did not advance this definition of the PSG before the BIA, we may not consider it. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). And, because Tobar does not otherwise contest that, as defined below, his first PSG is impermissibly circular, he has forfeited any challenge to that determination. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004).

The BIA's rejection of Tobar's second PSG, however, runs afoul of *Diaz-Reynoso v. Barr*. In *Diaz-Reynoso*, we clarified that "the conclusion that a proposed social group is impermissibly circular may not be reached summarily merely because the proposed group mentions harm." 968 F.3d at 1086. We therefore grant the petition for review with respect to the agency's rejection of the "abandoned children" PSG and remand to the agency to determine whether that PSG is cognizable without reference to persecution, and if so, whether any past persecution or feared future persecution has the required nexus to that PSG. *See id.* at 1088.

3.      Substantial evidence supports the BIA's conclusion that Tobar failed to

establish past torture. *See* 8 C.F.R. § 1208.16(c)(3)(i). Tobar testified that one gang member threatened to kill him, cited encounters with gang members who threw rocks at him, and said that a boy whom he suspected had been sent by gang members hit him at school. Tobar also pointed to eight occasions over a six-year period during which police officers stopped him, squeezed his fingers, beat him with closed fists, and prodded him with weapons. On one occasion, officers hit Tobar with a plant branch. The record did not compel the finding that this was sufficiently severe to constitute torture. *See* 8 C.F.R. § 1208.18(a)(2); *see also Kumar v. Gonzales*, 444 F.3d 1043, 1055 (9th Cir. 2006).

Nor was the BIA compelled to find on this record that Tobar would more likely than not face torture upon his return to El Salvador "by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. §§ 1208.17(a), 1208.18(a)(1). Country condition evidence established that Salvadoran law prohibits torture and other cruel and degrading practices and demonstrated the government's active measures to address violations. Tobar himself testified that if he reported his gang-member attackers, they could "have problems with the police or end up in jail." Thus, the record does not compel the conclusion that the government acted in concert with gangs in targeting Tobar or was turning a blind eye to their activity. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th Cir.

2016).  As to Tobar's concerns regarding corrupt police officers, the BIA properly concluded that there was no evidence that corrupt actors have a particularized interest in Tobar.  That fact, combined with the Salvadoran government's efforts to address corruption, supports the BIA's conclusion that Tobar is not more likely than not to face torture from a corrupt official.

**PETITION FOR REVIEW DENIED in part and GRANTED in part.**